UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
BRYAN JAEGER, individually and on behalf of all    :
persons similarly situated    :    No. 1:21-cv-11079
   :
               Plaintiffs,    :
   :    **COMPLAINT**
            -against-    :
   :
PETER DE PAOLA and DE PAOLA TRADING, INC.    :
   :
             Defendants.    :
----------------------------------------------------------------------x

## I.     INTRODUCTION

This is an action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, in which Plaintiff Bryan Jaeger, individually and on behalf of those similarly situated, asserts claims of, inter alia, breach of fiduciary duty including the imprudent investment of pension plan assets. Because Defendants have refused to provide Plaintiff with any information concerning such investments, Plaintiff has had to rely solely on publicly available information and what may be surmised from that information. As such, certain allegations are based on information and belief. Such allegations, Plaintiff believes, will be borne out by discovery.

## II.     JURISDICTION AND VENUE

1.    **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). Plaintiff notes that the Defendants might argue that his claims are subject to Financial Industry Regulatory Authority ("FINRA") arbitration rules. However, FINRA's arbitration rules preclude pursuing relief on other than an individual basis – i.e. relief for anyone other than the claimant is precluded. All the claims alleged in this complaint seek relief on behalf of the

DePaola Trading, Inc. Profit Sharing Plan ("Profit Sharing Plan" or "Plan") pursuant to ERISA §§ 409(a) and 502(a)(2)[1], 29 U.S.C. §§ 1109(a) and 1132(a)(2). The U.S. Supreme Court has held that such claims may only be brought for relief on behalf of an ERISA plan as a whole. See *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 140 (1985). Thus, because Plaintiff's claims herein seek relief only on a plan-wide basis rather than solely for the named Plaintiff, FINRA arbitration is precluded. As such Plaintiff's claims herein must be litigated in federal court, see *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613 (7th Cir. 2021); *Cedeno v. Argent Trust Company*, 2021 WL 5087898, 20-cv-9987 (JGK) (S.D.N.Y. 11/2/21), which has exclusive jurisdiction over such claims. ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

2.     **Personal Jurisdiction**. ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). Defendants are residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

3.     **Venue**. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District, the Defendant Plan is administered in this District, and at least one Defendant may be found in this District.

### III.     THE PARTIES

**Named Plaintiff**

4.     Named Plaintiff Bryan Jaeger ("Plaintiff") is a natural person and a former employee of Defendant De Paola Trading, Inc. He is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

---

[1] ERISA § 502(a)(2) grants ERISA plan participants, such as Plaintiff herein, authority to sue for the relief provided by ERISA § 409(a), which, in turn, sets forth the relief available for a breach of fiduciary duty.

**Defendants**

5.      Defendant De Paola Trading, Inc. (the "Company") is a broker-dealer incorporated in the state of New York the principal business of which is buying and selling securities on behalf of its customers. The Company is also the Plan Sponsor of the Profit Sharing Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). The Company is named in the Plan as its Plan Administrator. Plan, Art. 2, p. 7.[2] As such, the Company is the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

6.      Defendant Peter De Paola ("De Paola") is a natural person who is the president and chief executive officer of the Company. Upon information and belief, De Paola is the sole shareholder of the Company. De Paola is also the Trustee of the Plan, Plan, Art. 2, p. 11, the Investment Fiduciary of the Plan, *id.*, p. 6 and section 12.02(a), and, upon information and belief, performs the functions of the Plan Administrator on behalf of the Company; for each of these three reasons De Paola is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).[3]

## IV.     THE PLAN

7.      The DePaola Trading, Inc. Profit Sharing Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and a defined contribution plan (a/k/a an individual account plan) within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

---

[2] All references to provisions of the Plan are to the Plan as amended and restated effective January 1, 2015, which is, to Plaintiff's knowledge, the operative version of the Plan. . Despite Plaintiff having requested prior, and to the extent they exist, subsequent versions of the Plan, none were provided.

[3] Plaintiff is unaware if the Plan has any other fiduciaries such as an Investment Manager or a Third Party Administrator. Should such fiduciaries exist and have been involved in violations of ERISA, Plaintiff reserves the right to amend his complaint to add such fiduciaries as defendants.

8.      The Plan was first established as of January 1, 2007, and was amended and restated effective January 1, 2015.

9.      The Plan provides that it is solely employer (i.e. the Company) contributory, Plan section 4.01(a), although Plan participants may make rollover contributions. *Id*. section 4.02.

10.     While Plan assets are pooled for investment purposes, Plan section 9.02, those assets are to be allocated to the accounts of the Plan's participants. *Id*. sections 9.03 and 9.05(c). Thus, adjustments are made to each participant's account based on the account's allocable share of contributions to the Plan and the Plan's investment gains, losses, expenses and forfeitures. *Id*. section 9.05(c), (d).  A participant's ultimate benefit from the Plan will be the amount in his/her account.

11.     Unlike, e.g., a 401(k) plan in which participants typically select the investments for their individual accounts from a menu of options offered by that plan, all investment decisions for the Profit Sharing Plan are the responsibility of De Paola in his capacity as the Trustee and/or the Investment Fiduciary. Plan sections 10.03, 12.02.

12.     Plan "[p]articipants shall not have the right to direct the investment of their Accounts." Plan § 10.06(b).

## V.      FACTS

13.     Plaintiff was employed by the Company from September 2007, until March, 2020.

14.     At the time of the termination of his employment, Plaintiff was 100% vested in his Plan account.

15.     "A Participant shall become entitled to receive his vested Account pursuant to Section 7.02 following the date he has a Termination of Employment." Plan section 7.01(e).

16.     Plan section 7.02(a) provides in pertinent part:

> If a Participant's Account balance becomes distributable pursuant to Section 7.01 for any reason other than death, payment of his vested Account shall commence as soon as administratively feasible with a final payment made consisting of any allocations occurring after such Termination of Employment. Such Participant's benefit shall be payable, in cash, in a lump sum payment. No distribution shall be made if the Participant is rehired by the Company before payments commence.

17.     Plaintiff was thus entitled to receive his account balance upon the termination of his employment.

18.     Plan section 12.07(a) provides:

> A Participant or any other person entitled to benefits from the Plan (a "Claimant") may apply for such benefits by completing and filing a claim with the Plan Administrator. Any such claim shall be in writing and shall include all information and evidence that the Plan Administrator deems necessary to properly evaluate the merit of and to make any necessary determinations on a claim for benefits. The Plan Administrator may request any additional information necessary to evaluate the claim.

19.     A participant who wants to apply for benefits must, therefore, apply in accordance with Plan section 12.07(a). However, a participant must rely on the Plan Administrator in order to file a claim "in writing." Otherwise the participant has no way of knowing what "information and evidence . . . the Plan Administrator deems necessary to properly evaluate the merit of and to make any necessary determinations on a claim for benefits."

20.     Upon the termination of his employment, Plaintiff therefore contacted De Paola with respect to filing a claim for his account balance.

21.     De Paola stated that there was a claim form that needed to be completed and submitted.

22.     When Plaintiff requested that De Paola send him the form, De Paola was evasive, said things were complicated and that it would take time.

23.     Despite repeated communications with De Paola about the claim form, De Paola would not provide one to Plaintiff.

24.     Plaintiff then retained counsel who sent a letter to the Company on August 17, 2020, seeking various documents and information *inter alia* pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), including the claim form and certain financial information. The letter was sent by certified mail, return receipt requested (as well as regular mail) and was delivered on August 21, 2020.

25.     When no response to the letter was received, a follow-up letter, which enclosed the August 17, 2020, letter, was sent to the Company on October 7, 2020, by certified mail, return receipt requested (as well as regular mail) and was delivered on October 13, 2020. This letter (with the enclosure) was also sent to the Company's email address. No response was ever received.

26.     Plaintiff then contacted the United States Department of Labor ("DOL"). A DOL investigator then contacted De Paola who then promptly provided Plaintiff with a claim form.

27.     Plaintiff received a distribution from the Plan in the amount of $90,306.25 in January 2021, shortly after he submitted the completed claim form. In other words, it took from March 2020 when his employment terminated until January 2021 for Plaintiff to receive a distribution from the Plan.

28.     Subsequently, Plaintiff's counsel contacted the DOL investigator who stated that:

a.     a number of participants in the Plan had contacted him because they were not getting their benefits;

b.     De Paola was initially cooperative which is why Plaintiff received a distribution, however De Paola later became uncooperative and did not pay benefits to some participants who were entitled to them;

c.     the DOL investigator warned De Paola that if these issues were not resolved, he would have to refer the matter to the DOL investigations unit which would open a formal investigation;

d.     De Paola then stopped communicating with the DOL investigator; and

e.     A formal investigation was then opened.

29.     Plaintiff's counsel then contacted the DOL attorney in charge of the investigation and was informed that the investigation was ongoing and that De Paola continued to be uncooperative. For example, De Paola had been requested to retain an actuary to insure that Plan participants were receiving the correct amount of benefits but De Paola had refused.

## VI.     ERISA REQUIREMENTS AND DEFENDANTS' FAILURE TO COMPLY WITH THEM

### A.     Reporting and Disclosure

30.     ERISA §§ 101-111, 29 U.S.C.  §§ 1021-1031, set forth that Act's Reporting and Disclosure provisions.

31.     One such provision requires plans to file an annual report with the DOL. ERISA § 103, 29 U.S.C. § 1023. The report is filed on a form titled "Annual Return/Report of Employee Benefit Plan" and is typically referred to as Form 5500. These forms are filed electronically and are available on a web site maintained by the DOL. See https://www.efast.dol.gov/5500search/.

32.     Among other things, a Form 5500 is to be accompanied by a "financial statement and opinion" from an "independent qualified accountant." See ERISA § 103(a)(1)(B), (3), 29 U.S.C. § 1023(a)(1)(B), (3). The financial statement is required to include "a statement of the assets and liabilities of the plan aggregated by categories and valued at their current value, and the same data displayed in comparative form for the end of the previous fiscal year of the plan[.]" ERISA § 103(b)(3)(A), 29 U.S.C. § 1023(b)(3)(A).

33.     However, a simplified annual report may be filed if a plan has fewer than 100 participants.  ERISA § 104(a)(2)(A)(i), 29 U.S.C. § 1024(a)(2)(A)(i), 29 C.F.R. § 2520.104-41. The Profit Sharing Plan, according to its filed Forms 5500, has always had fewer than 100 participants. 29 C.F.R. § 2520.104-46 allows such plans to forgo filing the financial statement required pursuant to ERISA § 103(a)(1)(B), (3), and the Plan's Forms 5500 confirm that it was not filing that financial statement.

34.     Plans are also required to provide participants with a summary annual report ("SAR") each year. 29 C.F.R. § 2520.104b-10. As the name suggests, the SAR contains only a summary of the information in the Form 5500, and a very small summary at that, consisting essentially of the amounts of the plan's gains, losses, expenses, assets and liabilities. Importantly, the SAR contains no information with respect to the type of investments the plan has held or currently holds.

35.     However, pursuant to 29 C.F.R. § 2520.104-46(b), if a plan has fewer than 100 participants and has adopted the simplified reporting procedures discussed above, as has the Profit Sharing Plan, its SAR must, *inter alia*: (1) include the name of any regulated financial institution holding qualifying plan assets;[4] (2) inform participants of the name of that institution;

---

[4] The precise definition of qualifying plan assets is not pertinent to these allegations but will be supplied if and when necessary.

and (3) must inform participants of their right to obtain from the plan all "statements received from the regulated financial institutions describing the qualifying plan assets."

36.     The Plan's 2015 SAR, for example, lists Janney Montgomery Scott, LLC as such a regulated financial institution which held $571,136.16 in qualifying plan assets. That SAR also says participants have the right to receive copies of Janney Montgomery Scott, LLC's statements and should contact De Paola, as "a representative of the plan administrator," to obtain copies.

37.     Therefore, when Plaintiff, through counsel, requested financial information from Defendants, this information should have been provided as should other material that was requested such as the extant version of the Plan document and the most recent Form 5500, SAR and summary plan description which are required to be provided by ERISA § 104(b)(4), 29 U.S.C. § 1124(b)(4).

### B.     Fiduciary Responsibility

38.     Every ERISA plan is required to exist pursuant to a written plan document which, among other things, provides for one or more named fiduciaries to run the plan.  ERISA § 402(a)(1), (2), 29 U.S.C. § 1102(a)(1), (2). For the Profit Sharing Plan, upon information and belief, the named fiduciaries are the Defendants.

39.     Also, the plan administrator of an ERISA plan is always a fiduciary. 29 C.F.R. § 2509-75-8 D-3 Q&A. The Company is the Plan Administrator of the Plan and as such, and as alleged above, is a fiduciary.

40.     As per the Plan's SAR, De Paola represents the Company as Plan Administrator and is a fiduciary in that capacity. He is also a fiduciary because he is in charge of Plan investing.

41.     ERISA § 404(a), 29 U.S.C. § 1104(a), codifies the duties of plan fiduciaries:

(a)(1) PRUDENT MAN STANDARD OF CARE - Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

    (A) for the exclusive purpose of:
        (i) providing benefits to participants and their beneficiaries; and
        (ii) defraying reasonable expenses of administering the plan;

    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

    (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

    (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

(2) In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).

42.    Upon information and belief, the Plan is an eligible individual account plan. As such, Defendants must comply with the provisions of ERISA § 404(a) insofar as they require prudence, loyalty and compliance with Plan documents to the extent they are consistent with ERISA. Defendants must also comply with ERISA § 404(a)'s diversification requirements except to the extent the Plan holds "qualifying employer real property or qualifying employer securities[.]" Upon information and belief, the Plan has never held and currently does not hold such assets and, thus, must fully comply with ERISA § 404(a)'s diversification requirement.

43.     As stated, despite having been requested to do so, Defendants refused to provide Plaintiff with any information about the Plan's investments.

44.     Nonetheless, certain information may be gleaned from the Plan's Forms 5500.

45.     The following chart ("Chart 1") provides information from the Plan's Forms 5500 for each of the Plan's years from 2009 through 2019[5] as well as a comparison to the investment performance of three Vanguard funds:[6]

## CHART 1

| | Participants at start of year (Active and those who have left with balances) | Participants at year end (Active and those who have left with balances) | Assets at start of year | Assets at year end | Employer Contributions + other income[1] | Expenses | Benefits paid | Gain/Loss[2] | Vanguard Total Stock Market Index Fund Admiral[3] (VTSAX) Gain or Loss[4] | Vanguard S&P 500 Index Fund Admiral[5] (VFIAX) Gain or Loss[6] | Vanguard STAR Fund[7] VGSTX) Gain or Loss[8] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2007 | No Form 5500 | | | | | | | | | | |
| 2008 | No Form 5500 | | | | | | | | | | |
| 2009 | 8 | 8 | 100,858 | 172,946 | 65,165 + 6923 | 0 | 0 | 6.86% | 28.83% | 26.62% | 24.85% |
| 2010 | 8 | 6 | 172,946 | 243,608 | 68,682 + 3,041 | 0 | 1061 | 1.75% | 17.26% | 15.05% | 11.70% |
| 2011 | 6 | 6 | 243,608 | 292,948 | 67,079 + 17,739[9] | 0 | 0 | 5.7% | 1.08% | 2.08% | 0.77% |
| 2012 | 6 | 6 | 292,948 | 406,302 | 64,004 + 58,522 | 0 | 9,172 | 19.97% | 16.38% | 15.96% | 13.79% |
| 2013 | 6 | 6 | 406,302 | 492,423 | 61,446 + 32,345 | 0 | 7,670 | 1.88% | 33.52% | 32.33% | 17.80% |
| 2014 | 7 | 10 | 492,423 | 570,194 | 57,805 + 19,966 | 0 | 0 | 4.05% | 12.56% | 13.64% | 7.35% |
| 2015 | 9 | 10 | 570,194 | 662,667 | 91,341 + 1,132 | 0 | 0 | 0.19% | 0.39% | 1.36% | 0.15% |
| 2016 | 10 | 13 | 662,667 | 760,254 | 99,375 + 2,714 | 0 | 4,502 | 0.04% | 12.66% | 11.93% | 6.55% |
| 2017 | 13 | 16 | 760,254 | 971,011 | 132,495 + 78,678 | 0 | 416 | 10.34% | 21.17% | 21.79% | 18.33% |
| 2018 | 16 | 17 | 971,011 | 1,097,339 | 165,824 + 31,360 | 4,041 | 4,095 | 2.77% | 5.17% | 4.43% | 5.34% |
| 2019 | 18 | 21 | 1,097,339 | 1,056,278 | 0 + 114,023 | 5,084 | 150,000 | 10.39% | 30.80% | 31.46% | 22.21% |
| 2020 | | | | | | | | | 20.99% | 18.37% | 21.43% |
| Total Over/Under | | | | | | | | | | | |

[1] It is assumed that "other income" consists of investment gains and losses.
[2] Because exact figures are not available, calculations of gains and losses have been done as follows:
  Gains – other income divided by assets at start of year;
  Losses – other income divided by (Assets at year end plus other income). This maximizes the percent gain and minimizes the percent loss in any year.
[3] "Vanguard Total Stock Market Index Fund is designed to provide investors with exposure to the entire U.S. equity market, including small-, mid-, and large-cap growth and value stocks." See https://investor.vanguard.com/mutual-funds/profile/vtsax.
[4] See https://finance.yahoo.com/quote/VTSAX/performance/
[5] "The [Vanguard S&P 500 Index Fund Admiral] offers exposure to 500 of the largest U.S. companies, which span many different industries and account for about three-  fourths of the U.S. stock market's value." See https://investor.vanguard.com/mutual-funds/profile/VFIAX.
[6] See https://finance.yahoo.com/quote/VFIAX/performance/
[7] "[The Vanguard STAR Fund is a] balanced fund . . . invested 60% in stocks and 40% in bonds." See https://investor.vanguard.com/mutual-funds/profile/VGSTX.
[8] See https://finance.yahoo.com/quote/VGSTX/performance/
[9] Numbers in red indicate a loss

[5] While the Plan was established in 2007, the DOL web site includes no Form 5500 for either 2007 or 2008.

[6] Because Defendants have refused to provide Plaintiff with any information about the Plan's investments, Plaintiff cannot know what investments might be more appropriate comparisons. By selecting these three Vanguard funds, Plaintiff does not suggest that they are totally appropriate comparisons. But the Vanguard funds are useful as comparisons because they show (1) how badly the Plan underperformed  a stock fund and, upon information and belief, the Plan invested solely or predominately in stocks, and (2) how badly the Plan underperformed even the diversified Vanguard STAR Fund.

46. The following three charts (Chart 2, Chart 3 and Chart 4) provide a year by year comparison of the Plan's actual assets at the start of each year versus what its assets would have been had it been invested in each of the Vanguard funds.

## CHART 2

### PLAN ASSETS AT START OF YEAR IF INVESTED IN
### VANGUARD TOTAL STOCK MARKET INDEX FUND ADMIRAL

| Year | Actual Plan Assets at Start of Year | Plan Assets at Start of Year if Invested in Vanguard Total Stock Market Index Fund Admiral | Vanguard Total Stock Market Index Fund Admiral Rate of return | Vanguard Total Stock Market Index Fund Admiral Gain/Loss | Employer Contribution to Plan | Expenses Paid by Plan | Benefits Paid by Plan |
|---|---|---|---|---|---|---|---|
| 2009 | 100,858 | Unknown[1] | 28.83% | 29,077 | 65,165 | | 0 |
| 2010 | 172,946 | 195,100 | 17.26% | 33,674 | 68,682 | | 1,061 |
| 2011 | 243,608 | 296,395 | 1.08% | 3,201 | 67,079 | | 0 |
| 2012 | 292,948 | 366,675 | 16.38% | 60,061 | 64,004 | | 9,172 |
| 2013 | 406,302 | 481,568 | 33.52% | 161,422 | 61,446 | | 7,670 |
| 2014 | 492,423 | 696,766 | 12.56% | 87,514 | 57,805 | | 0 |
| 2015 | 570,194 | 842,085 | 0.39% | 3,284 | 91,341 | | 0 |
| 2016 | 662,667 | 936,710 | 12.66% | 118,587 | 99,375 | | 4,502 |
| 2017 | 760,254 | 1,150,170 | 21.17% | 243,491 | 132,495 | | 416 |
| 2018 | 971,011 | 1,525,740 | 5.17% | 78,881 | 165,824 | 4,041 | 4,095 |
| 2019 | 1,097,339 | 1,604,547 | 30.80% | 490,200 | 0 | 5,084 | 150,000 |
| 2020 | 1,056,278 | 1,939,663 | 20.99% | | | | |

[1] Because there are no Form 5500s for the Plan available online for 2007 or 2008, Plaintiff cannot calculate what the Plan's investment performance would have been had is assets been invested in this Fund.

47. Per Chart 2, had the Plan been invested in the Vanguard Total Stock Market Index Fund Admiral, its assets as of 12/31/19 would have been 83.63% more than they were thereby increasing the account balances of all participants by 83.63%. That would have increased Plaintiff's benefit by $75,523.12.

**CHART 3**

**PLAN ASSETS AT START OF YEAR IF INVESTED IN
VANGUARD S&P 500 INDEX FUND ADMIRAL**

| Year | Actual Plan Assets at Start of Year | Plan Assets at Start of Year if Invested in Vanguard S&P Index Fund Admiral | Vanguard S&P Index Fund Admiral Rate of return | Vanguard S&P Index Fund Admiral Gain or Loss | Employer Contribution to Plan | Expenses Paid by Plan | Benefits Paid by Plan |
|---|---|---|---|---|---|---|---|
| 2009 | 100,858 | Unknown[1] | 26.62% | 26,622 | 65,165 | | 0 |
| 2010 | 172,946 | 192,871 | 15.05% | 29,027 | 68,682 | | 1,061 |
| 2011 | 243,608 | 289,519 | 2.08% | 6,022 | 67,079 | | 0 |
| 2012 | 292,948 | 362,620 | 15.96% | 57,874 | 64,004 | | 9,172 |
| 2013 | 406,302 | 475,326 | 32.33% | 153,673 | 61,446 | | 7,670 |
| 2014 | 492,423 | 682,776 | 13.64% | 93,131 | 57,805 | | 0 |
| 2015 | 570,194 | 833,712 | 1.36% | 11,338 | 91,341 | | 0 |
| 2016 | 662,667 | 936,391 | 11.93% | 111,711 | 99,375 | | 4,502 |
| 2017 | 760,254 | 1,142,975 | 21.79% | 249,054 | 132,495 | | 416 |
| 2018 | 971,011 | 1,524,108 | 4.43% | 67,518 | 165,824 | 4,041 | 4,095 |
| 2019 | 1,097,339 | 1,614,278 | 31.46% | 507,852 | 0 | 5,084 | 150,000 |
| 2020 | 1,056,278 | 1,967,046 | 18.37% | | | | |

---

[1] Because there are no Form 5500s for the Plan available online for 2007 or 2008, Plaintiff cannot calculate what the Plan's investment performance would have been had is assets been invested in this Fund.

      48.    Per Chart 3, had the Plan been invested in the Vanguard S&P 500 Fund Admiral, its assets as of 12/31/19 would have been 86.22% more than they were thereby increasing the account balances of all participants by 86.22%. That would have increased Plaintiff's benefit by $77,862.05.

**CHART 4**

**PLAN ASSETS AT START OF YEAR IF INVESTED IN
VANGUARD STAR FUND**

| Year | Actual Plan Assets at Start of Year | Plan Assets at Start of Year if Invested in Vanguard STAR Fund | Vanguard STAR Fund Rate of Return | Vanguard STAR Fund Gain or Loss | Employer Contribution to Plan | Expenses Paid by Plan | Benefits Paid by Plan |
|---|---|---|---|---|---|---|---|
| 2009 | 100,858 | Unknown[1] | 24.85% | 25,063 | 65,165 | | 0 |
| 2010 | 172,946 | 191,086 | 11.70% | 22,357 | 68,682 | | 1,061 |
| 2011 | 243,608 | 281,064 | 0.77% | 2,164 | 67,079 | | 0 |
| 2012 | 292,948 | 350,307 | 13.79% | 48,307 | 64,004 | | 9,172 |
| 2013 | 406,302 | 453,446 | 17.80% | 80,713 | 61,446 | | 7,670 |
| 2014 | 492,423 | 587,935 | 7.35% | 43,213 | 57,805 | | 0 |
| 2015 | 570,194 | 688,953 | 0.15% | 1,033 | 91,341 | | 0 |
| 2016 | 662,667 | 779,261 | 6.55% | 51,042 | 99,375 | | 4,502 |
| 2017 | 760,254 | 925,176 | 18.33% | 169,585 | 132,495 | | 416 |
| 2018 | 971,011 | 1,226,840 | 5.34% | 65,513 | 165,824 | 4,041 | 4,095 |
| 2019 | 1,097,339 | 1,450,041 | 22.21% | 322,054 | 0 | 5,084 | 150,000 |
| 2020 | 1,056,278 | 1,617,011 | 21.43% | | | | |

---

[1] Because there are no Form 5500s for the Plan available online for 2007 or 2008, Plaintiff cannot calculate what the Plan's investment performance would have been had is assets been invested in this Fund.

49.     Per Chart 4, had the Plan been invested in the Vanguard STAR Fund, its assets as of 12/31/19 would have been 53.08% more than they were thereby increasing the account balances of all participants by 53.08%. That would have increased Plaintiff's benefit by $47,934.56.

50.     Despite the due date for filing a Form 5500 for particular year being July 31 of the following year, or, if an extension is sought, by October 31 of the following year, no Form 5500 for the Plan is available online for 2020, although the Plan must have been in existence in 2020 and 2021 because Plaintiff received his benefit in January 2021 and the DOL has confirmed that some participants have still not received their benefits so their Plan accounts must still be active.

51.     The Plan states that a participant whose Plan benefits are vested and whose employment terminates is entitled to receive his Plan benefits upon termination of employment. The benefit amount is the amount in the participant's account valued "as of the Valuation Date[7] coincident with or next preceding the date of distribution." Plan section 7.02(c).

52.     Upon information and belief, Plaintiff's Plan benefit was based on a December 31, 2019, Valuation Date rather than a December 31, 2020, Valuation Date.

53.     In 2020, the Vanguard Total Stock Market Index Fund Admiral earned 20.99%, see Chart 2, supra, the Vanguard S&P 500 Index Fund Admiral earned 18.37%, see Chart 3, supra, and the Vanguard STAR Fund earned 21.43%. See Chart 4, supra. Had Plaintiff not improperly been denied earnings for 2020, his benefit amount would have been substantially higher.

## VII. CLASS ALLEGATIONS

54.     **Class Definition**. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1) or (b)(2) on behalf of the following class:

> (1) All persons who are currently employed by De Paola Trading, Inc. and have account balances in the DePaola Trading, Inc. Profit Sharing Plan, other than Peter De Paola and (2) all persons formerly employed by De Paola Trading, Inc. who were totally or partially vested in their DePaola Trading, Inc. Profit Sharing Plan account balances at the time their employment with DePaola Trading, Inc. terminated, whether or not such formerly employed persons have received a distribution from the DePaola Trading, Inc. Profit Sharing Plan.

Class treatment is appropriate in this case because it would promote judicial economy by adjudicating the Plaintiff's ERISA claims with respect to all class members.

---

[7] The Plan defines Valuation Date as the last day of the Plan Year. Plan Article 2, p. 11. Plan Year is defined as the calendar year. *Id*. p. 7.

55.     **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiff, the number appears to be more than twenty.

56.     **Commonality.** The claims of Plaintiff and all class members originate from the same misconduct, breaches of duties, and violations of ERISA perpetrated by Defendants. The questions of law and fact common to the Class include, but are not limited to:

    a.     Whether Defendants breached their fiduciary duty to diversify the investments of the Plan so as to minimize the risk of large losses;

    b.     Whether Defendants' breached their fiduciary duty to invest the Plan's assets prudently;

    c.     Whether Defendants violated the Plan and ERISA by failing to use the correct Valuation Date in the calculation of Plaintiff's and class members' benefits;

    d.     Whether Defendants have violated the Plan and ERISA by failing to provide documents and information requested by Plaintiff and class members;

    e.     Whether Defendants should be replaced by an Independent Fiduciary;

    f.     Whether Plaintiff and the class members are entitled to an audit of the Plan's finances including its investments;

    g.     Whether Defendants are ERISA fiduciaries;

    h.     Whether Defendants' fiduciary breaches caused losses to the Plan; and

    i.     Whether Defendants, or either of them; should be required to make the Plan whole for any losses caused by their breaches of fiduciary duty.

57.   **Typicality.** Plaintiff's claims on behalf of his Plan are not only typical of, but the same as, claims that could be brought by class members with respect to the Plan. Individual cases would require each class member to prove the same claims based upon the same conduct of the Defendants, using the same legal theories, and would be seeking the same relief.

58.   **Adequacy.** Plaintiff will fairly and adequately protect the interests of class members. Plaintiff has no interests antagonistic to, or in conflict with, those of the Class. Plaintiff will vigorously protect the interests of absent class members.

59.   Plaintiff has retained counsel who are competent and have extensive experience in class action and ERISA litigation. Plaintiff's counsel is the firm of Keller Rohrback L.L.P.

60.   **Rule 23(b)(1)(A) & (B) Requirements.** Class action status is warranted under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecution of separate actions by class members would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B), because prosecution of separate actions by class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

61.   **Rule 23(b)(2) Requirements.** Certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other equitable relief with respect to the Class as a whole. No individualized inquiry would be required to determine whether Defendants' breached their fiduciary duties.

## VIII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### Breach of Fiduciary Duty
#### (ERISA §§ 404(a)(1)(C), 409(a), 29 U.S.C. §§ 1104(a)(1)(C), 1109(a))

62.     Plaintiff repeats and realleges the matter set forth in paragraphs 1-63 above as if fully set forth herein.

63.     As the above Charts show, the Plan has substantially underperformed each of the compared Vanguard funds, underperforming even the most conservative of them by more than 50%.

64.     The Forms 5500 for the Plan for calendar years 2009 and 2010 responded yes to the question: "Did the plan at any time hold 20% or more of its assets in any single security, debt, mortgage, parcel of real estate, or partnership/joint venture interest?" Upon information and belief, this investment was a stock sold on the New York Stock Exchange.

65.     Upon further information and belief, especially because the business of the Company is in the securities industry, the Plan's investments were solely or overwhelmingly in publicly traded equity securities.

66.     Had the Plan's investments been properly diversified either solely within the equity market or among various types of investments, its earnings would have been substantially greater.

67.     The Plan has been damaged by Defendants' breaches of fiduciary duty insofar as Defendants failed to diversify the Plan's investments.

68.     Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), fiduciaries, such as Defendants, are "personally liable to make good to [a] plan any losses to the plan resulting from [the fiduciary's breaches].

**SECOND CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404(a)(1)(B), 409(a), 29 U.S.C. §§ 1104(a)(1)(B), 1109(a))**

69.     Plaintiff repeats and realleges the matter set forth in paragraphs 1-68 above as if fully set forth herein.

70.     The Plan has been damaged by Defendants' breaches of fiduciary duty insofar as Defendants failed to invest the Plan's assets prudently.

**THIRD CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404(a)(1)(A), (D), 409(a), 29 U.S.C. §§ 1104(a)(1)(A), (D), 1109(a))**

71.     Plaintiff repeats and realleges the matter set forth in paragraphs 1-70 above as if fully set forth herein.

72.     Plan section 9.05(c) provides:

> Allocation to Individual Accounts. The Accounts of each Participant shall be adjusted as of each Valuation Date by: (1) reducing such Accounts by any distributions and withdrawals made therefrom since the preceding Valuation Date; (2) increasing or reducing such Accounts by the Participant's share of earnings and losses and reasonable fees charged against such Accounts at the direction of the Plan Administrator; and (3) crediting such Accounts with any contributions made thereto since the preceding Valuation Date.

73.     Based on the statements of his Plan account which were provided to Plaintiff, his account (a) was consistently shortchanged when, *inter alia*, investment gains and employer contributions were "allocated" to his account and (b) his account was consistently overcharged when investment losses and expenses were "allocated" to his account.

74.     For example, Plaintiff's Plan statement for 2018 states that his account balance at the end of 2017 was $76,718.00. The Plan's total assets at year-end 2017 were $971,011 (see Chart 1, supra). As such, Plaintiff's account constituted 7.9% of the Plan's assets at that time.

There were $165,824 in employer contributions in 2018 according to the Form 5500 for that year. Based on Plaintiff's account as a percentage of the Plan's assets, his account should have been credited with $13,100.10 ($165,824 x .079 = $13,100.10) of those contributions. But Plaintiff was only allocated $8,107.97.[8]

75.     Because the amounts allocated to Plaintiff's account were incorrect, that per force means that the amounts allocated to the accounts of other Plan participants must have been incorrect, i.e., one or more participants have received insufficient allocations and one or more participants have received excess allocations.

76.     A reallocation is required so that all participants' accounts have received their correct allocations.

**FOURTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404(a)(1), (D), 406(a)(1)(D), 409(a),**
**29 U.S.C. §§ 1104(a)(1), (D), 1106(a)(1)(D), 1109(a))**

77.     Plaintiff repeats and realleges the matter set forth in paragraphs 1-76 above as if fully set forth herein.

78.     Rather than the Plan being solely employer contributory, when the Company paid Plaintiff and, upon information and belief, class members, their earned commissions, three (3%) per cent (or more) of those commissions were deducted ostensibly to make the employer's contributions to the Plan.

79.     In other words, despite Plan language to the contrary, employees did contribute to the Plan and may have been the sole contributors to the Plan.

---

[8] Plaintiff has assumed the allocation of employer contributions was to be based on the amount in each participant's account as compared to total Plan assets. However, there are several permitted methods for the allocation of employer contributions in profit sharing plans. In that Plaintiff has not been provided with the method by which the Plan allocated employer contributions or those calculations,.absent discovery, Plaintiff cannot assess whether employer contribution allocations were properly made.

80.     Once an employer has received employee contributions, those contributions

become plan assets and the employer becomes a fiduciary with respect to those assets. 29 C.F.R.

2510.3-102(a)(1). In general, those contributions must be paid to the Plan within seven (7) days

of their receipt by the employer. 29 C.F.R. 2510.3-102 (a)(2).

81.     While the Company has consistently withheld 3% (or more) of Plaintiff's and,

upon information and belief, other participants' commissions, the Company has failed to pay the

entire amounts withheld to the Plan.

82.     ERISA § 406, 29 U.S.C. § 1106, is titled "Prohibited Transactions." The section

makes an individual who is a "party in interest" strictly liable for certain transactions.

83.     Each Defendant is a "party in interest" within the meaning of ERISA § 3(14), 29

U.S.C. § 1002(14).

84.     One such prohibited transaction is the "transfer to, or use by or for the benefit of a

party in interest, of any assets of the plan[.]"See ERISA § 406(a)(1)(D), 29 U.S.C. §

1106(a)(1)(D). Other prohibited transactions are set forth in ERISA § 406(b), 29 U.S.C. §

1106(b) including a prohibition against a fiduciary "dealing with the assets of the plan in his own

interest or for his own account[.]"

85.     The failure of Defendants to transfer all of the money withheld from employees'

commissions, and its retention by the Company, constitute breaches of the Defendants' fiduciary

duties as well as prohibited transactions.

**FIFTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404(a)(1)(A), (D), 409(a), 29 U.S.C. §§ 1104(a)(1)(A), (D), 1109(a))**

86.     Plaintiff repeats and realleges the matter set forth in paragraphs 1-85 above as if

fully set forth herein.

87.     Contrary to Plan provisions providing that the Company *shall* pay the Plan's expenses, Plan section 12.04, the Company charged the Plan for its expenses in certain years and those expenses were allocated to (i.e. deducted from) the accounts of Plaintiff and class members. The Plan is entitled to reimbursement for such expenses.

**SIXTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404(a)(1)(A)-(D), 409(a), 29 U.S.C. §§ 1104(a)(1)(A)-(D), 1109(a));**

88.     Plaintiff repeats and realleges the matter set forth in paragraphs 1-87 above as if fully set forth herein.

89.     Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), fiduciaries, in addition to being liable for any losses they have caused a plan, are also "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

90.     Defendants' abject failure to comply with their fiduciary responsibilities, whether intentional or negligent, render them unfit to continue as Plan fiduciaries.

91.     Defendants should be removed as Plan fiduciaries and an Independent Fiduciary should be appointed in their place.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404(a)(1)(B), (C), (D), 409(a), 29 U.S.C. § 1104(a)(1) )(B), (C), (D), 409(a))**

92.     Plaintiff repeats and realleges the matter set forth in paragraphs 1-91 above as if fully set forth herein.

93.     Whether or not the Defendants are removed as Plan fiduciaries and an Independent Fiduciary is appointed for the Plan in their stead, an Independent Auditor should be appointed to perform a comprehensive audit of the Plan, paid for by the Company, in order to examine the Plan's financial history including, but not limited to, the Plan's investments, the

purchases and sales of those investments, the timing of those investments, any expenses attributable to those investments such any commissions paid and to whom, the allocation of assets and their gains and losses among the accounts of participants and any other matter that the Independent Auditor deems necessary and appropriate to investigate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

(A)    A Declaration that one or both Defendants breached their fiduciary duties by failing to diversify the Plan's investments appropriately;

(B)    A Declaration that one or both Defendants breached their fiduciary duties by failing to invest the Plan's assets prudently;

(C)    A Declaration that Defendants have engaged in prohibited transactions;

(D)    A Declaration that one or both Defendants breached their fiduciary duties by requiring the Plan to pay expenses;

(E)    A Declaration that Defendants' fiduciary breaches and engaging in prohibited transactions have each damaged the Plan and caused it monetary losses;

(F)    A Declaration of the amount of monetary losses the Plan has suffered due to Defendants' fiduciary breaches and prohibited transactions;

(G)    An Order compelling Defendants to make good to the Plan all monetary losses resulting from Defendants' breaches and prohibited transactions including appropriate interest;

(H)    A Declaration that Defendants have improperly allocated investment gains and losses, employer contributions, forfeitures and expenses among the accounts of Plaintiff and class members;

(I)    An Order requiring that investment gains and losses, employer contributions, forfeitures and expenses be properly allocated among the accounts of Plaintiff and class members;

(J)    A Declaration that Defendants' fiduciary breaches warrant their removal as Plan fiduciaries;

(K)    An Order removing Defendants as Plan fiduciaries;

(L)    An Order appointing an Independent Fiduciary for the Plan;

(M)    A Declaration that a comprehensive independent audit of the Plan's finances is required due to Defendants' fiduciary breaches;

(N)    An Order: appointing an Independent Auditor to conduct an audit of the Plan's finances; setting forth the scope of that audit; and requiring the Company to pay for the audit;

(O)    An Order awarding Plaintiff his costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

(P)    An Order awarding Plaintiff's attorneys their fees pursuant to the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable law; and

(Q)    An Order for surcharge, equitable restitution and other appropriate equitable relief against Defendants.

Dated:   New York, NY
         December 27, 2021

Respectfully submitted,
Keller Rohrback L.L.P.


By: /s/ David S. Preminger
    David S. Preminger
1140 6th Avenue, Ninth Floor
New York, NY 10036
Phone: (646) 380-6690
Fax: (646) 380-6692
dpreminger@kellerrohrback.com

Gary A. Gotto
Keller Rohrback L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Phone: (602) 248-0088
Fax: (602) 248-2822
ggotto@kellerrohrback.com